V. MAUNEY, Administrator, v. STOKES INGRAM.

*Claim and Delivery---Bailee---Practice---Demurrer to Answer--
Counterclaim.*

1. A bailee of a horse has no lien upon the animal for expenses incurred in feeding and taking care of it.

2. In an action of claim and delivery for a horse, where the answer alleges a lien upon it, a demurrer to the answer does not admit the lien. It merely admits the facts set out in the answer denying their sufficiency in law.

3. Where in such case the owner is dead and the action is brought by his personal representative, a debt due defendant for feeding and taking care of the horse, cannot be set up as a counter claim.

(*Kesler* v. *Roseman*, Busb. 389, cited and approved.)

CIVIL ACTION, tried at Spring Term, 1876, of MONTGOMERY Superior Court, before *Buxton, J.*

The plaintiff brought this action to recover possession of a gray mare belonging to his intestate, under the provisions of C. C. P. Title IX, Chapter 2,—Claim and Delivery of personal property. The defendant on demand of the plaintiff refused to deliver the mare, and in his answer, which admits the plaintiff's property, sets up a claim for compensation for feeding and taking care of her for three years at the price of $75 per year, and insists upon the right to retain her until his charges are paid. The plaintiff demurs to the answer, and specifies as the ground of his objection, that in law, no such lien exists upon the statement of facts contained in the answer. The Court overruled the demurrer, and allowed replication, and from this judgment the plaintiff appealed.

*Messrs. L. S. Overman* and *W. G. Burkhead,* for plaintiff, cited Parsons on Contracts; Leigh's Nisi Prius; 11 Barb. 41; *Maxwell* v. *Houston,* 67 N. C. 305.

*Messrs. Neill McKay* and *J. W. Hinsdale*, for defendant.

SMITH, C. J. (After stating the facts as above) The question thus presented for our determination is as to the validity of the alleged lien for the defendant's charges, and his right to retain possession until they are paid.

We are of opinion that the defendant has no such lien, and his withholding the property is a tort which entitl s the plaintiff to the redress he seeks. The doctrine of liens on personal property is very clearly stated by Mr. Adams: "A lien is a right to retain a personal chattel until a debt due the person retaining is satisfied, and it exists at common law, independently of liens by agreement or usage, in three cases; (1) Where the person claiming the lien has by his labor or expense improved or altered the chattel. (2) Where he is bound by law to receive the chattel or to perform the service in respect of which the lien is claimed. (3) Where the claim is for salvage."

"The general rule," says *Parke, Baron,* as laid down by BEST, CHIEF JUSTICE, in *Bevan* v. *Waters,* and by this Court in *Scarfe* v. *Morgan,* is, that by the general law in the absence of any special agreement, whenever a party has expended labor and skill in the improvement of a chattel bailed to him, he has a lien upon it." *Jackson* v. *Cummings,* 5 M. & W. 348.

And it is held that while an inn-keeper, like a common carrier, by reason of his public employment, and the stringent obligations it imposes, has a lien upon the goods of his guest for board, a livery stable keeper has none upon the horse which he feeds. The authorities cited by plaintiff's counsel fully settle this. 2 Kent Com. 634; 3 Parsons on Contracts, 338, 342, 250; Oliphant on Horses, 139; *York* v. *Greenaugh,* 2 Lord Raymond, 868.

In a full and elaborate discussion of the subject in the Supreme Court of New York, BRONSON, J. delivering the

opinion says; "The right of lien has always been admitted when the party was bound to receive the goods, and in modern times the right has been extended so far that it may now be laid down as a general rule, that any bailee for hire who by his labor and skill has imparted an additional value to the goods, has a lien upon the property for his reasonable charges. This includes all such mechanics, tradesmen and laborers as receive property for the purpose of repairing or otherwise improving its condition. But the rule *does not extend to a livery stable keeper*, for the reason that he only keeps the horse without imparting any new value to the animal. And besides, he does not come within the policy of the law which gives the lien for the benefit of trade." *Grinnell* v. *Cook*, 3 Hill, 491.

Assuming that the defendant stands in the relation of bailee to the intestate, (a fact not distinctly averred in the answer) he is certainly no more entitled than a livery stable keeper to retain possession of a horse until his charges for keeping and feeding are paid. In neither case does the law recognize a lien.

But the defendant's counsel insists that the demurrer admits the lien, and that the only way to raise the question of its validity, is to deny it by replication. This is a misconception of the office and effect of a demurrer. The demurrer admits the facts set out in the pleading and denies their sufficiency as a defence. Thus an issue of law arises to be decided by the Court, and it is, whether upon the defendant's own statements, a lien exists in his favor upon the mare which warrants his refusal to surrender possession to the plaintiff. This question has already been disposed of.

The defendant also sets up a counter-claim, and says he has a right to have the mare sold, and his debt paid out of the proceeds of sale. This position is equally untenable. The plaintiff, as owner of the property and deriving his

title from the intestate through the letters of administration, seeks in this action to recover the mare as part of his intestate's estate, in order that it may be applied in a due course of administration according to law. His cause of action accrues from the defendant's wrongful conduct since the intestate's death, and a counter-claim for a debt due from the intestate cannot be interposed to prevent the specific property, or its value in case of loss or destruction, from passing into the hands of the plaintiff as part of a trust fund to be disposed of as required by law. *Kesler* v. *Roseman*, Busb. 389. No creditor can be permitted by his own tortious act to obstruct or interfere with the proper and legal administration of the property of his debtor after his death, and thus under the form of a counter-claim secure an unlawful priority to himself. If the defendant had a lien, the plaintiff could not recover possession of the mare without paying it, or the defendant's demand might be paid out of the proceeds of a sale. But in the absence of a lien, no counter-claim having such effect can be set up within the true meaning of C. C. P. § 101. The action being in tort for withholding property to which the plaintiff is entitled, it is difficult to see how a mere money demand like this can be said to arise out of the transaction set forth in the complaint as the foundation of the plaintiff's claim, or be so connected with the subject of the action as to constitute the counter-claim defined in the Code. The current of judicial opinion in the States which have adopted Codes that contain a similar provision, and the views of Mr. Pomeroy in his work on Remedies and Remedial Rights, seem to be unfavorable to such defence. But as it is not necessary to a determination of the cause, and the point is not wholly free from doubt, we express no decided opinion in regard to it.

The judgment below must therefore be reversed and the demurrer sustained. We cannot proceed to give final judg-

ument here, for the reason that the plaintiff demands damages for the detention, and unless the parties agree upon their amount, a jury may be required to assess them. The record shows that the mare has been sold, and the fund left in the plaintiff's hands to await the result of the suit, and the proper orders in relation thereto must be made in the Court below.

There is error. Let this be certified to the Superior Court of Montgomery, to the end that such further proceedings may be there had as are necessary to a final disposition of the cause.

PER CURIAM.                          Judgment reversed.